FILED

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JUDGE DUDLEY H. BOWEN, JR./MAGISTRATE JUDGE JAMES E. GRAHAM

JOHN B. THOMPSON,

          Plaintiff,

v.                                      Case No. 6:10-cv-442

THE FLORIDA BAR,
FLORIDA SUPREME COURT,
and NATIONWIDE MUTUAL INSURANCE COMPANY,

          Defendants.

## PLAINTIFF'S NOTICE TO COURT

COMES NOW plaintiff John B. Thompson (Thompson) and hereby provides notice of the filing of the attached before another tribunal. These filings bear upon GrayRobinson's and Greenberg Traurig's motions to ban Thompson from the federal court system. This court must not grant these outlandish motions which only serve to prove the wisdom of Justice Douglas' prediction about this compulsory bar's "goose-stepping brigades."

I HEREBY CERTIFY that a copy of this notice has been provided this 15th day of September, 2010, by filing this, in paper form, with the court, which will in turn provide it electronically to Barry Richard, Greenberg Traurig, 101 East College Avenue, Tallahassee, Florida 32302 [The Florida Bar]; Peter Antonacci, Gray Robinson, P.O. Box 11189, Tallahassee, FL 32302 [Florida Supreme Court]; and John Marino [Nationwide], Fowler White, 50 North Laura Street, Suite 2800, Jacksonville, Florida 32202.

JOHN B. THOMPSON
Plaintiff *pro se*
5721 Riviera Drive
Coral Gables, Florida 33146
Phone:  305-666-4366
amendmentone@comcast.net

No. _____

---

IN THE SUPREME COURT OF THE UNITED STATES

---

JOHN B. THOMPSON,

Applicant,

vs.

THE ELEVENTH CIRCUIT COURT OF APPEALS,
NORTHERN DISTRICT COURT OF FLORIDA,
MIDDLE DISTRICT OF FLORIDA, AND
SOUTHERN DISTRICT OF FLORIDA,

Respondents.

---

**Emergency Application for Appointment of Special Committee to Investigate
the Respondents' Efforts to Protect the Illegal Activities of The Florida Bar**

---

**To the Honorable Clarence Thomas
Associate Justice of the Supreme Court and
Circuit Justice of the Eleventh Circuit Court:**

Applicant John B. Thompson, pursuant to  Rule 22 of this Court and

28 U.S.C. Section 1651(a), moves this Court for an order appointing a Special

Committee to investigate the Eleventh Circuit's and the federal district

courts of Florida for their ongoing, improper efforts to protect and in fact

assist the illegal, unconstitutional,  and criminal activities of The Florida

Bar.

1

Slightly more than two years ago, Supreme Court Chief Justice Roberts appointed a Special Committee to investigate Ninth Circuit Chief Judge Kozinski's alleged on-line porn collection.

A far more serious situation now exists in the Eleventh Circuit: Participation by the appellate and trial courts in The Florida Bar's and Florida Supreme Court's illegal use of "lawyer discipline" to target and destroy whistle-blowing attorneys whose sin has been to tell the truth.

The Florida Supreme Court guaranteed in its 1949 Order by which it created our state's integrated, compulsory-membership bar that lawyer discipline would never be used to enforce conformity of thought, as if it were a "guild," upon its lawyers.

The American Bar Association in 1992 issued its McKay Commission Report identifying as fatally flawed Florida's lawyer discipline structure, which makes inevitable the politicization of lawyer discipline.

In 1961, Supreme Court Associate Justice William O. Douglas, in his prescient dissent in *Lathrop v. Donohue,* predicted that eventually integrated state bars would become "goose-stepping brigades" enforcing ideological conformity and wiping out an independent bar indispensable to the maintenance of an independent judiciary.

Numerous Florida lawyers have been targeted by The Florida Bar's "goose-stepping brigades" with the knowing assistance of the Eleventh Circuit. The applicant herein is just one of them. He was disbarred for

2

blowing the whistle on the violent video game industry on CBS' *60 Minutes* and for securing Federal Communications Commission decency fines against the broadcasters of the pornographic *Howard Stern Show*.

Another Florida lawyer, an African American woman, has been targeted by The Florida Bar because she blew the whistle on The Florida Bar's racist, good ol' boy network.

Another Florida lawyer was destroyed for discovering that all but one of the Justices on the Florida Supreme Court had failed to execute state- and federally-mandated loyalty oaths.

Another Florida lawyer is now under disciplinary attack by The Florida Bar for his successful efforts in leading the statewide voter initiative that resulted in our state's constitutional amendment that prohibits gay marriage.

The Florida Bar has two tactics of last resort: The first is compulsory mental health exams for whistle-blowing lawyers. The second is denying Florida lawyers their right of self-representation in bar proceedings.

Query: Why must the above be of concern to the United States Supreme Court and to the Associate Justice assigned to oversee the workings of the Eleventh Circuit?

Answer: Because the Eleventh Circuit Court of Appeals and all three District Courts in the state of Florida have knowingly *conspired* with The Florida Bar to deny any and all federal judicial relief to *any* Florida lawyer

3

seeking a remedy to The Florida Bar's assault upon his/her constitutional rights. For example:

The Northern District Court of Florida has instructed its Clerk of Court not to issue subpoenas to a lawyer who has brought a civil rights action against the Florida Supreme Court and Bar.

The Middle and Northern District Courts of Florida have entered orders on motions filed by The Florida Bar before the whistle-blowing plaintiff Florida lawyer could even respond to them.

Yet the Southern District of Florida leads the Article III pack in making sure that no Florida lawyer targeted by The Bar will ever secure federal judicial relief. Florida Southern District Court Judge Adalberto Jordan has a) sought to discipline a whistle-blowing lawyer who brought him evidence of The Florida Bar's facilitation of the distribution of obscene materials to minors, b) ignored evidence of the bribery of a bar official, c) ignored the cherry-picking appointments of bar disciplinary referees in violation of the mandated random selection process, d) ignored irrefutable proof of the fraudulent misciting of case authority by The Florida Bar's outside counsel, and e) committed misprision of a felony.

Not to be outdone by Judge Jordan, the Chief Judge of the Southern District of Florida, Federico Moreno, has a) maintained a secret docket for bar disciplinary files separate to prevent Bar-targeted lawyers from reviewing them, and b) illegally used the U.S. Marshal to deny normal access

to the federal courthouse to a lawyer targeted by The Florida Bar, branding him a "terrorist."

Finally, Chief Judge Dubina of the Eleventh Circuit Court of Appeals, has been alerted to the antics of the various district courts of Florida in conspiring with The Florida Bar to turn lawyer discipline in this state into the "goose-stepping brigades" predicted by Justice Douglas. Judge Dubina has a formal duty to inquire into this judicial misconduct. He refuses.

Thus, the applicant turns to the United States Supreme Court, pursuant to Rule 22 and 28 USC 1651(a) for an order appointing a Special Committee, as it did in the Kozinski matter, to address the Eleventh Circuit's knowing complicity in turning The Florida Bar's disciplinary machinery into a reign of terror imposed through Star Chamber proceedings that constitute the high-tech lynchings of uppity lawyers.

But don't take the applicant's word for any of this. Two Florida Supreme Court Justices recently wrote in the *Liberty Counsel* case: "The Florida Supreme Court has abdicated its duty to supervise The Florida Bar."

If that is true, and it is, and the Eleventh Circuit, at both the trial and appellate levels, *refuses* to extend or even consider *any* form of federal judicial relief to whistle-blowing lawyers targeted for "discipline" and Soviet-style mental health exams by the Florida Supreme Court and Bar, then, with all respect, the United States Supreme Court must act.

As it now stands, no lawyer in the State of Florida enjoys the protection of the United States Constitution.   He is deprived of any semblance of due process.   He has mental health exams imposed upon him simply because he is a dissident.   Bar referees are bribed and cherry-picked to assure certain disciplinary results.    And the Eleventh Circuit, fully cognizant of what is going on in the State of Florida, refuses to act.

This suspension of the United States Constitution by the Florida Supreme Court and Bar   is beyond, in its consequence, the pornography collection of Ninth Circuit Chief Judge Kazinski.   Pornography is by its very nature perverse.   But in Florida, the regulation of the practice of law has become both perverse and obscene.   It is up to the United States Supreme Court to come to the rescue not only of this state's lawyers being trampled by Justice Douglas' predicted goose-stepping brigades.

WHEREFORE, applicant moves the court for the appointment of a Special Committee outside the Eleventh Circuit to ascertain what in the world is going on in Florida to destroy the practice of law.

I HEREBY CERTIFY that a copy hereof has been provided, via the US mail, this 10th day of September, 2010, to Chief Judge Dubina, Eleventh Circuit Court, 56 Forsyth St NW, Atlanta, GA 30303, Chief Judge Moreno (Southern), 400 North Miami Avenue, Miami, FL 33128, Chief Judge Anne Conway (Middle),  400 W. Central Blvd, Orlando, FL 32801, and Chief Judge Mickle (Northern), 401 SE First Avenue, Gainesville, FL 32601.

6

John B. Thompson, Applicant
5721 Riviera Drive
Coral Gables, Florida 33146
Phone:  305-666-4366
amendmentone@comcast.net

No. _____

---

IN THE SUPREME COURT OF THE UNITED STATES

---

JOHN B. THOMPSON,

Applicant,

vs.

THE ELEVENTH CIRCUIT COURT OF APPEALS,
NORTHERN DISTRICT COURT OF FLORIDA,
MIDDLE DISTRICT OF FLORIDA, AND
SOUTHERN DISTRICT OF FLORIDA,

Respondents.

---

**Applicant's Supplement to His Emergency Application for Appointment of Special Committee to Investigate the Respondents' Efforts to Protect the Illegal Activities of The Florida Bar**

---

To the Honorable Clarence Thomas
Associate Justice of the Supreme Court and
Circuit Justice of the Eleventh Circuit Court:

Applicant John B. Thompson, pursuant to Rule 22 of this Court and 28 U.S.C. Section 1651(a), supplements his Application for an order appointing a Special Committee to investigate the Eleventh Circuit and the federal district courts of Florida for their ongoing, improper efforts to protect and in fact assist the illegal, unconstitutional, and criminal activities of The Florida Bar, by providing the below additional facts that can be verified by the Special Committee:

1

# I. IMPROPER AND NON-UNIFORM SELECTION OF BAR REFEREES

The Florida Bar's method of selecting bar referees, who serve as single individual tribunals to conduct lawyer discipline trials, are is fatally flawed in two regards:

## A. One Florida Circuit Has Built-In Referee Bias

Florida consists of twenty (20) judicial circuits.   The Florida Supreme Court has a formal Rule by which a lawyer who practices primarily in one judicial circuit *shall* be tried before a referee who is a judge in a completely different judicial circuit.   This is done in order that the respondent lawyer will neither benefit from nor be harmed by familiarity with the presiding judge/bar referee.

This cross-circuit pollination for bar discipline is required in all of Florida's twenty judicial circuits, save one—Florida's Eleventh Judicial Circuit, which is comprised of Miami-Dade County.   An Eleventh Circuit lawyer is tried before an Eleventh Circuit judge serving as a Bar referee. Here's just one problem arising from this facial disparity:   If a lawyer has engaged in behavior that has prompted a Miami-Dade judge to file an ethics complaint against him, then the targeted lawyer is tried before a judge who serves on the bench with and is thus a colleague of the complainant.

2

## B. Bar Referees Are Chosen Differently in Different Circuits

Applicant has today received a partial response to his public records requests sent to the various Chief Judges of all twenty judicial circuits asking them how they select bar referees.

It turns out that the various circuits are not uniform in this regard. In Miami-Dade County, for example, the Chief Judge supposedly chooses referees among all sitting judges in their alphabetical order. This alleged procedure was violated in applicant Thompson's instance when the Chief Judge *leapfrogged twenty-two judges* (unless the alphabet itself has been modified) to appoint Circuit Judge Dava Tunis, out of alphabetical order, for the purpose of assuring a disciplinary result unfavorable to Thompson. This referee had a relationship with the Director of Lawyer Regulation for The Florida Bar, and she had served, for four years, as an operative within The Bar's disciplinary machinery, which she covered up from applicant. She also received money from three individuals keenly interested in an outcome unfavorable to Thompson's bar proceedings.

Be that as it may, the Eighth Judicial Circuit, as indicated by its response to Thompson's public records request, has what it calls an "informal rotation schedule" that is applied solely at the discretion of that Circuit's Chief Judge. No alphabet is used. It is not blind, and in fact the Chief Judge can intentionally match a judge who has had this same lawyer before him/her as a referee even though the conduct has no relation to previous proceedings.

3

Such an "informal" process is, by its very nature and by virtue of human nature, prone to mischief.  This is precisely why other states, such as California, have lawyer disciplinary hearing boards comprised of multiple members, and why other states have sped away from single referee bar tribunals.

Surely a state should have a *uniform* system for the appointment of bar referees statewide, since we have in Florida just one bar and with that one bar should come one set of rules.

The arbitrary, non-blind, non-uniform selection of referees gives rise to grave due process concerns, as pointed out in Francolino v. Kuhlman, 365 F.3d 137 (2nd Cir. 2004).  The court in *Francolino* noted that when a prosecutor chooses the tribunal and if that tribunal acts in such a fashion that prejudices a litigant, then a due process deprivation may have occurred.

The American Bar Association's McKay Commission Report, issued in 1992 and entitled "Lawyer Regulation for a New Century" (available on-line at http://www.abanet.org/cpr/reports/mckay_report.html), warned state bars eighteen years ago that running a state lawyer disciplinary system the way Florida does is a recipe for the "politicization" of the entire process.

## II. THE FLORIDA BAR IS RUNNING A LAWYER PROTECTION RACKET THROUGH ITS CAPUTURED MALPRACTICE INSURANCE CARRIER

The Florida Bar created the Florida Lawyers Mutual Insurance Company (FLMIC) to provide private sector malpractice insurance to lawyers to compete with other carriers.

Sitting on this Bar-created insurance company are Bar Governors and even the Executive Director of The Florida Bar, Jack Harkness.

Shockingly, however, as part of its "coverage" promises, openly and publicly, to assist any of its insured lawyers, against whom bar complaints have been filed, to do whatever is necessary to win those bar ethics cases and to frustrate the citizens who have brought them.

Thus, The Florida Bar, through its Bar-created insurance company and run by Bar officials, is providing protection to its customers *from* Bar discipline.

## III. THE FLORIDA BAR'S ILLEGAL USE OF MENTAL HEALTH EXAMS AND RECORDS TO EXTORT TARGETED LAWYERS

The Florida Bar, in violation of the Americans with Disabilities Act, routinely threatens lawyers, whom it has targeted for discipline, with coerced mental health exams in an attempt to stigmatize them and extort them into accepting certain bar discipline.

In one instance, The Florida Bar generated false mental health records of a lawyer and then made them public in order to destroy a whistle-blowing lawyer.

In applicant Thompson's instance, The Bar sought, over a decade ago, to stigmatize him, publicly, as mentally ill because of his faith-based and successful public interest law litigation. The Bar's carrier paid him money damages for this outrage.. The Bar then tried this same lunacy stunt again in order to try to coerce Thompson into accepting a 90-day bar license suspension. When he refused, The Bar, in a retributive act also in violation of the ADA, upped the disciplinary sanction from a 90-day suspension to a lifetime disbarment—all because he objected to The Bar's Soviet-style attempts to pathologize his whistle-blowing. We have in Florida a Bar whose tactics would make the Mafia blush.

Applicant could go on. But he will resist. What we need, which is the purpose of this Rule 22 Application, is a Special Committee from another federal Circuit to investigate how and why The Florida Bar, with the complicity of the Eleventh Circuit's federal judiciary, is attempting to turn this state's practice of law into the Gulag Sunshine Archipelago.

WHEREFORE, applicant moves the court for the appointment of a Special Committee outside the Eleventh Circuit for the purposes indicated.

I HEREBY CERTIFY that a copy hereof has been provided, via the US mail, this 13th day of September, 2010, to Chief Judge Dubina, Eleventh Circuit Court, 56 Forsyth St NW, Atlanta, GA 30303, Chief Judge Moreno (Southern), 400 North Miami Avenue, Miami, FL 33128, Chief Judge Anne Conway (Middle), 400 W. Central Blvd, Orlando, FL 32801, and Chief Judge Mickle (Northern), 401 SE First Avenue, Gainesville, FL 32601.

John B. Thompson, Applicant
5721 Riviera Drive
Coral Gables, Florida 33146
Phone: 305-666-4366
amendmentone@comcast.net